UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 06-044 (RMC) |
| : | |
| : | Hearing: June 23, 2006 |
| PAUL M. ADAMS, : | |
| : | |
| Defendant. : | |
| _____ : | |

UNITED STATES' OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds to Defendant's Motion to Suppress Evidence, Incorporated Memorandum In Support Thereof, and Request for Evidentiary Hearing (Motion to Suppress). In support of this opposition, the United States would show the following:

FACTUAL BACKGROUND

1. The defendant is charged with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One year, in violation of 18 U.S.C. § 922(g)(1); Unlawful Possession With the Intent to Distribute Phencyclidine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and Using, Carrying or Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c).

2. On January 10, 2006, at approximately 4:00 p.m., Officers Robert Underwood and Toby Sealey of the Metropolitan Police Department, while wearing full uniforms and driving a marked police vehicle, entered the 1900 block of R Street, S.E., Washington, D.C. The officers were in the area to check on reports of narcotics trafficking and prostitution at 1912 R Street.

3. As the officers entered the block, they observed the defendant, who was later identified as Paul Adams, walking out of 1912 R Street. The defendant turned left as he exited the building. As the defendant began to walk down the block in a direction away from the officers, the officers observed that the defendant's body language and gait was consistent with someone carrying a weapon. Specifically, the officers observed that the defendant's right arm was stiff and held closely to his body and the left was looser. Both hands were in the pockets of his jacket. Both officers believed that the defendant was carrying a gun. The officers immediately decided to take positions that were to their tactical advantage with Officer Underwood getting out from the vehicle while behind the defendant and Officer Sealey driving to an area in front of the defendant. During this period of time, Officer Sealey observed the butt of a handgun in the defendant's right hand. Officer Sealey then drove the police vehicle past the defendant. The defendant then started walking at an accelerated pace.

4. As Officer Underwood followed the defendant, Officer Underwood identified himself and yelled for the defendant to take his hands out of his pockets. The defendant did not comply initially. Then, the defendant turned and made eye contact with Officer Underwood. Nonetheless, the defendant turned again and continued to walk away from the officer. Ultimately, after Officer Underwood continued to yell for the defendant to stop and take his hands out of his pockets, the defendant turned and faced Officer Underwood.

5. At this point, Officer Sealey had positioned his vehicle close to the defendant. Officer Sealey then exited the vehicle and, simultaneously with Officer Underwood, grabbed the defendant. As the officers placed him on the ground for safety purposes, the defendant kept his hands in his pockets and continued to struggle. Officer Underwood grabbed the defendant's right hand through

the jacket and felt an object consistent in size and shape with a gun. Officer Underwood placed a pressure hold to the defendant's hand as Officer Sealey jerked the defendant's hand out of his pocket. The officers then recovered a 9mm Smith & Wesson handgun from the defendant's front jacket pocket. The defendant was then placed under arrest.

6. In a search incident to his arrest, the police recovered a vial with a yellowish liquid consistent with phencyclidine from the defendant's person. After the defendant was arrested, he was advised of his constitutional rights and he voluntarily waived them and gave a videotaped statement to Detective Kevin Tighe of the Metropolitan Police Department.

7. The defendant contends that the evidence in this case should be suppressed because the police did not have probable cause to stop the defendant. See, Motion to Suppress, Section I. The defendant is wrong. Upon observing the defendant walking out of the building, the officers' noted that the defendant's gait and body language was consistent with a person carrying a gun and, moreover, Officer Sealey observed the handle of a gun in the defendant's hand as he was walking away. These observations, along with the defendant's increased efforts to leave the scene upon observing the police, gave raise to a reasonable suspicion that criminal activity was afoot and authorized the police to conduct a Terry stop. The defendant further argues that his statement should be suppressed because his statement was involuntary. See, Motion to Suppress, Section II. Again, the defendant is simply wrong. Detective Tighe fully advised the defendant of all of his rights and the defendant waived those rights.

**DISCUSSION**

The Motion to Suppress Should Be Denied
Because The Police Had An Articulable
Suspicion That The Defendant Was
Engaged In Criminal Behavior

8. The Motion to Suppress should be denied because the observations by Officers Underwood and Sealey gave rise to an articulable suspicion that the defendant was carrying a firearm. In light of these suspicions, the police were authorized to conduct a brief investigatory stop of the defendant. Therefore, the defendant's Fourth Amendments rights were not violated and the Motion to Suppress should be denied.

9. A warrantless seizure may be justified if it is the result of a lawful investigatory stop. United States v. Jones, 374 F. Supp.2d 143, 149 (D.D.C. 2005), citing, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968). An officer may briefly detain a citizen if he has a reasonable, articulable suspicion that criminal activity is afoot. United States v. Edmonds, 240 F.3d 55, 59 (D.C. Cir. 2001)(quoting Terry, 392 U.S. at 30). The Terry stop only requires a minimal amount of objective justification. Edmonds, 240 F.3d at 59; United States v. Davis, 235 F.3d 584, 586 (D.C. Cir. 2000). "'Reasonable suspicion is not a finely-tuned standard; instead it is a fluid concept that derives substantive content from the particular context in which it is being assessed. The standard is dependent on both the content of information possessed by police and its degree of reliability and requires a showing considerably less than preponderance of the evidence.'" Jones, supra, 374 F.3d at 149-150 (quoting United States v. Holmes, 360 F.3d 1339, 1341-42 (D.C. Cir. 2004). "To support an investigative stop, it is sufficient that the facts present and the rationale inferences to which these facts give rise, reasonably warrant the intrusion . . . ." United States v. Savage, 889 F.2d 1113, 1118

(D.C. Cir. 1989). Finally, the reasonableness of the police conduct is assessed by the totality of the circumstances. United States v. Clark, 24 F.3d 299, 301 (D.C. Cir. 1994). Here, given the experience of these two officers and their observations of the defendant, they had an articulable suspicion that he was carrying a firearm.

10. Indeed, upon arriving on the block, the officers observed the defendant coming out of a building that had been the subject of citizen complaints and was the reason why the officers were in the area. Further, the officers observed that the defendant's right arm was stiff and held closely to his body while the left arm was held in a looser fashion, and that both hands were in the pockets of his jacket. These observations, in conjunction with the defendant's gait and the officer's experience, caused both officers to believe that the defendant was carrying a gun. So the officers began to put themselves in a position that was to their tactical advantage. Almost simultaneously with this, Officer Sealey observed the handle of a gun in the defendant's right hand. After Officer Underwood exited the police vehicle, Officer Sealey drove the police vehicle past the defendant. The defendant then began to walk an accelerated pace. This all occurred before there was any contact whatsoever with the defendant.

11. Officer Underwood started to walk behind the defendant and began to yell for the defendant to take his hands out of his pockets. However, the defendant did not comply. As Officer Underwood continued to follow and yell for the defendant to stop and take his hands out of his pocket, the defendant turned and looked in the direction of Officer Underwood. However, the defendant turned again and started to walk away. A moment later the defendant turned around and squarely faced Officer Underwood. At this point Officer Sealey apprehended the defendant and Officer Underwood assisted in placing the defendant on the ground. The defendant's hands

remained in his pockets the entire time. Officer Underwood patted the defendant's jacket pocket and felt a shape consistent with a handgun being held by the defendant. The officers were ultimately successful in taking the defendant's hands out of his pockets. The defendant was placed under arrest at this point and, in a search incident to that arrest, the police recovered a vial of phencyclidine.

12. Here, by the time that the defendant was actually stopped, the police had observed (1) him exiting from a location that reportedly was the scene of narcotics trafficking and prostitution; (2) walking with a gait consistent with a person carrying a handgun (i.e., both arms in jacket pockets with one arm stiff and held close to side of body. and the second arm loose); (3) the handle of a handgun in the right jacket pocket; (4) the defendant walking at an accelerated pace upon observing the officers; and (5) refusing to comply with the officer's instructions to remove his hands from his pockets and stop. Plainly, these facts known to the officers, when viewed together, provide an articulable suspicion that criminal activity was afoot. See United States v. Lovelace, 357 F. Supp.2d 39, 4344 (D.D.C. 2004)(Terry stop proper where the police observe the defendant in an area known for narcotics trafficking; a hand-to-hand transaction; two furtive gestures; and the officer detected the smell of marijuana). Therefore, the Motion to Suppress should be denied.

14. Moreover, in light of their suspicion that the defendant was carrying a handgun, Officer Underwood was justified in patting down the defendant's pocket. United States v. Clark, supra, 24 F.3d at 302. Here, the officers observed the defendant carrying a handgun and, moreover, the defendant was not complying with their instructions to stop and take his hands out of his pockets. Therefore, for the safety of the officers, Officer Underwood properly patted down the defendant's pocket.

15. In turn, once the police found the handgun in the defendant's pocket, they had probable

cause to search the defendant and recover the vial of phencyclidine. See United States v. Robinson, 414 U.S. 218, 235-36 (1973); United States v. Tavolacci, 895 F.2d 1423, 1428-29 (D.C. Cir. 1990). Therefore, the Motion to Suppress should be denied in its entirety.

The Motion to Suppress Should Be
Denied Because The Defendant
Voluntarily Waived His Right To Remain Silent

16. The Court should also reject the defendant's argument that his statements to Detective Tighe should be suppressed. The Motion to Suppress does not even address the fact that the defendant was advised of his rights and voluntarily waived those rights in writing. A copy of the waiver is attached hereto as Exhibit 1. Likewise, the motion completely fails to articulate any basis for believing that the defendant's waiver of his rights was somehow coerced. Indeed, defendant does not set forth any sort of over-reaching by the police. There is simply nothing to suggest that the defendant's waiver is not valid.

17. The Supreme Court has held that statements made by an accused, while in police custody, are inadmissible unless the police, prior to questioning, warn him that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so chooses. Miranda v. Arizona, 384 U.S. 436, 479 (1966). For purposes of this motion, the United States concedes that the defendant was in custody and interrogated at the time he was questioned by Detective Tighe. The issue is whether the defendant knowingly, intelligently and voluntarily waived these rights.

18. The United States bears the burden proving by a preponderance of the evidence that the defendant waived his rights and gave a statement to the police. In making this determination, the

primary consideration for courts has been whether the statements resulted from police coercion. Thus, "[t]he voluntariness of a waiver of this privilege has always depended on the absence of police overreaching." Colorado v. Connelly, 479 U.S. 157, 170 (1986). In order to reduce the risk of a coerced statement, the accused must be apprised of his rights and the exercise of those rights respected. Missouri v. Seibert, 542 U.S. 600, 608-09 (2004). The admissibility of an accused's statements is generally conditioned on warning the accused of his rights. Id. "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." North Carolina v. Butler, 441 U.S. 369, 373 (1979). In deciding whether an accused has waived his rights, court will employ an objective standard for evaluating the waiver, and take into consideration the defendant's education, experience and the conduct of the accused. United States v. Yunis, 859 F.2d 953, 965 (D.C. Cir. 1988). Employing these principles to the instant case, it is clear that the defendant gave a valid waiver of his rights after being properly advised by Detective Tighe.

19. At the time of his waiver, the defendant was thirty-seven years olds. In addition, the defendant had prior convictions for attempted possession with the intent to distribute cocaine in 1994-Fel-5236; a Bail Act Violation in 1994-Fel-5235; attempted possession with the intent to distribute cocaine in 1993-Fel-4560; and carrying a pistol without a license in 1993-CMD-1354. In short, the defendant was well into his adult years and was sophisticated about the criminal justice system.

20. Moreover, as reflected in Exhibit 1, the defendant was given warnings by Detective Tighe that he has

> the right to remain silent. You are not required to say thing to us at any time or to answer any questions. Anything you say can be used against you in court.
>
> the right to talk to a lawyer for advice before we question you and to have him with you during questioning.

In addition, the defendant was advised that a lawyer would be appointed for him if he could not afford one on his own. Lastly, the defendant was advised that if he wanted to "answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer." In sum, the defendant was fully advised of his rights.

21. The defendant then went on to waive those rights by acknowledging that he had been advised of his rights, that he understood his rights, and agreeing to answer questions without a lawyer being present. See Exhibit 1. All of this is reflected on the defendant's PD 47. United States v. Gandy, 705 F. Supp. 31, 32 (D. D.C. 1989)(holding PD 47 to be evidence of waiver of rights).

22. The Motion to Suppress and record here gives absolutely no indication of coercion by the police. Indeed, the record demonstrates that the defendant, an adult familiar with the criminal justice system, was fully advised of his rights and agreed to waive those rights and answer Detective Tighe's questions. Therefore, the Motion to Suppress should be denied in its entirety.

## **CONCLUSION**

Therefore, upon the foregoing facts and the authorities cited, the Court should deny the Motion to Suppress in its entirety.

              Respectfully,

              KENNETH L. WAINSTEIN
              United States Attorney

By: _____
    MICHAEL T. TRUSCOTT
    ASSISTANT UNITED STATES ATTORNEY
    Member of the New York Bar
    Federal Major Crimes Section
    United States Attorney's Office
    555 Fourth Street, N.W., Room 4237
    Washington, D.C. 20530
    Phone: (202) 514-7533
    Fax: (202) 514-6010

CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing United States' Opposition to Defendant's Motion to Suppress was caused to be served via United States Mail, postage prepaid, upon counsel of record for the defendants, this 2nd day of June, 2006, upon:

Tony Miles
Assistant Federal Public Defender
625 Indian Avenue, N.W., Suite 550
Washington, D.C. 20004

 

MICHAEL T. TRUSCOTT