**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CRIMINAL NO. 06-044 (RMC) |
| : | |
| PAUL ADAMS : | |
| : | |
| Defendant. : | |

**MEMORANDUM IN AID OF SENTENCING**

Defendant Paul Adams, through counsel, respectfully submits the following Memorandum in aid of his sentencing.

1. On November 21, 2006, Paul Adams will come before this Court to be sentenced pursuant to his guilty plea to unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year (18 U.S.C. § 922(g)(1)) and unlawful possession of phencyclidine (21 U.S.C. § 844(a)). According to the Pre-Sentence Report (PSR) prepared by the United States Probation Office, Mr. Adams's sentencing guideline range is 27 to 33 months. Mr. Adams agrees with the guideline calculations in the PSR.

2. In this Memorandum, Mr. Adams argues that, pursuant to 18 U.S.C. § 3553(a), a sentence of probation is the most reasonable sentence in this case when considering the various mitigating factors which are present.

**ARGUMENT**

**I.   THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to

1

apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, 125 S.Ct. 738 (2005). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to Booker, therefore, courts must treat the Guidelines as one, among several, sentencing factor.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a) – which were explicitly endorsed by the Supreme Court in Booker – sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses

charged.

    Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the <u>Booker</u> majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

    Taken together, the directives of <u>Booker</u>, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. After <u>Booker</u>, courts need not justify sentences outside the guideline range by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may exercise their discretion in individual cases and impose sentences which are not within the proposed guideline range.

    **II.    A SENTENCE OF PROBATION IS THE MOST REASONABLE SENTENCE IN THIS CASE.**

        **A.    Background**.

Paul Adams and his family experienced many traumatic events while Mr. Adams was growing up. When Mr. Adams was very young, the home in which he lived was destroyed due to a fire. PSR, ¶ 56. The fire left his family with no possessions and the fire had a significant financial impact on the family. <u>Id.</u>. Additionally, Mr. Adams's mother was forced to move from residence to residence as a result of the fire. <u>Id.</u>. Due to his mother's transiency, Mr. Adams eventually began

living with his grandmother in the District of Columbia. Id.. About three years after moving in with his grandmother, Mr. Adams's mother passed away in March of 1980. PSR, ¶ 54. Only a few months after his mother's death, Mr. Adams's father passed away as a result of a heart attack. Id..

Mr. Adams attended highschool in the District of Columbia and he managed to complete the eleventh grade. PSR, ¶ 69. Although Mr. Adams stopped attending school in 1988, he was able to earn his GED shortly thereafter in 1989. Id.. Two years after earning his GED, Mr. Adams began a respectable work history. From 1991 to 1994 and again in 1997, Mr. Adams worked as a customer service assistant for a cleaners in the District of Columbia. PSR, ¶ 80. Mr. Adams was also employed as a dishwasher in 1997. PSR, ¶ 79. Between 2000 and 2002, Mr. Adams worked as a site supervisor for Office Movers and as a warehouse supervisor at Current News Company. PSR, ¶ 76 & 77. From 2002 to 2005, Mr. Adams was employed as a supervisor at Starbuck's coffee shop in Bethesda, Maryland. PSR, ¶ 75.[1] Shortly after leaving his Starbucks job due to transportation issues, Mr. Adams worked as a concierge for a condominium complex in northwest Washington, D.C.. From March 2006 to August 2006, while the instant case was pending, Mr. Adams worked as a concession supervisor for Aramark Services. PSR, ¶ 73. Through this employment, Mr. Adams did concession work at Robert F. Kennedy (RFK) Stadium. Id.. Mr. Adams's primary responsibility was to supervise concession work at all home Washington Nationals baseball games.

Apart from his use of illegal substances, Mr. Adams was able to live a law abiding life as a working person during most of his adult years. The only times Mr. Adams has been convicted for engaging in illegal conduct was during a brief period in the early-mid 1990s and his recent

---

[1] While employed as a supervisor at Starbucks, Mr. Adams enrolled in classes at DeVry University Keller Institute in Bethesda, Maryland in 2004. PSR, ¶ 70. Mr. Adams took classes in business studies and computers, but he was unable to complete the program at DeVry. Id..

conviction for the instant offenses. The early-mid 1990s convictions occurred during the period between 1993 and 1994. During this limited period, Mr. Adams suffered convictions for a misdemeanor firearms possession offense, a misdemeanor Bail Reform Act crime and for some drug related offenses. Significantly, none of Mr. Adams's prior convictions include any crimes of violence.

After rebounding from the early-mid 1990s period, Mr. Adams became romantically involved with De'atrice Waters from 1997 to 2001. PSR, ¶ 57. While in this relationship, Mr. Adams and Ms. Waters had a child together. Id.. Although Mr. Adams and Ms. Waters are no longer romantically involved, Mr. Adams maintains a friendly relationship with Ms. Waters and Mr. Adams has regular contact with their daughter. Id.. Mr. Adams has maintained "a 'perfect' relationship with his daughter and has been involved in her life consistently since [his daughter's] birth." Id..

Admittedly, Mr. Adams's main vice has been his use of drugs and alcohol. Mr. Adams's alcohol use began when he was only eight years of age and his use of marijuana began when he was nine. PSR, ¶¶ 64 & 65. As Mr. Adams grew older, his abuse of these substances intensified. By fifteen, Mr. Adams was drinking two to three times a week and he was using marijuana daily. PSR, ¶¶ 64 & 65. At age twenty-one, Mr. Adams was often drinking daily. PSR, ¶ 64. Mr. Adams began experimenting with the more serious drug of phencyclidine (PCP) when he was twenty-four. PSR, ¶ 65. Although Mr. Adams was not abusing drugs and alcohol as frequently at around the time of his arrest in this case,[2] he was still struggling with his addiction to these substances when arrested.

At the time of his arrest, Mr. Adams showed that he is a credible person who sincerely wants

---

[2] Mr. Adams was using alcohol about one to five times per week and he used marijuana only a few times "[d]uring the year preceding his arrest in the instant offense." PSR, ¶ 65.

to live an honest and productive life. Shortly after his arrest, Mr. Adams provided the police with a videotaped statement. In the statement, Mr. Adams quibbled with the officer with respect to whether he had a gun in his hand. But, Mr. Adams did not deny that he was in possession of a gun on the day of his arrest and he did not deny that he had a gun in his pocket. Mr. Adams also did not deny being in possession of PCP. In fact, in a remarkable display of early acceptance of responsibility, Mr. Adams said the following about his conduct: "you make your bed, you got to lie in it." In apparent recognition of Mr. Adams's genuine remorse, the interviewing police officer told Mr. Adams that "there's a whole lot of other things you could be doing other than this situation." Mr. Adams replied to the officer by stating that "all that's been running through my mind." Mr. Adams made it clear during his interview that he regretted his behavior and that he was serious about making positive changes in his life.

    Since his arrest in this case, Mr. Adams has shown that he truly wants to make significant improvements in his life. Since his arrest, Mr. Adams has stayed out of trouble and he has reduced his consumption of alcohol. Although Mr. Adams still struggles with his drug addiction at times, he has shown tremendous strength and he has almost entirely ended his use of drugs.[3] Additionally, based on the most recent report from Pretrial Services Agency, Mr. Adams has never missed reporting to his supervising officer in person and he has only missed one drug testing appointment. Mr. Adams was able to obtain employment with Aramark in March of 2006 and he maintained that employment until the Nationals' baseball season was near its end. More recently, Mr. Adams has been exploring his options with regard to pursuing a college education. Mr. Adams's goal is to

---

[3] With the exception of his initial test on March 31, 2006 and a test in July of 2006, Mr. Adams has consistently tested negative for the new use of drugs.

return to school as soon as possible and find a job that will allow him to work around his academic schedule.

Since his arrest, Mr. Adams has continued to show his acceptance of responsibility for his conduct and he continues to express his remorse. Mr. Adams has continued to show his acceptance of responsibility at various stages in this case since making his statement to the police. Mr. Adams accepted responsibility when pleading guilty on August 10, 2006 and he indicated his acceptance of responsibility when meeting with the PSR writer. PSR, ¶ 12. Mr. Adams also continued expressing his remorse when he met with the PSR writer by telling the PSR writer that "he is 'very sorry' for his actions" and by promising that "he will not engage in such conduct in the future." Id..

**B.   18 U.S.C. § 3553(a) Factors**.

A sentence of probation will more than adequately reflect the seriousness of Mr. Adams's offenses. See 18 U.S.C. § 3553(a)(2)(A). Mr. Adams's offenses are non-violent offenses and Mr. Adams immediately expressed his regret and remorse for his conduct. Mr. Adams views a sentence of probation as serious punishment because such a sentence will require him to be accountable to an officer of this court and he realizes that he could face a later sentence of incarceration if he fails to abide by his probationary obligations. Therefore, a sentence of probation will more than adequately reflect the seriousness Mr. Adams's offenses. For these same reasons, a sentence of probation is also consistent with promoting respect for the law and with providing just punishment for Mr. Adams's offenses. See 18 U.S.C. § 3553(a)(2)(A).

Considering that a non-custodial resolution of this case will have a tremendous impact on the quality of Mr. Adams's life, a sentence of probation will provide ample deterrence for Mr. Adams and anyone else who may consider committing a similar crime. See 18 U.S.C. §

3553(a)(2)(B). As discussed above, a sentence of probation will require Mr. Adams to regularly report to an officer of the court and he will have certain restrictions placed on his liberty while he is on probation.

Considering that all of Mr. Adams's prior convictions occurred several years ago and considering the tremendous improvements he has made to his life since his commission of the instant offenses, it is very unlikely that Mr. Adams will commit any criminal conduct in the future. Therefore, a sentence of probation will adequately protect the community from any further crimes on the part of Mr. Adams. 18 U.S.C. § 3553(a)(2)(C).

Finally, when considering the nature and circumstances of the offenses along with the history and characteristics of Mr. Adams,[4] a sentence of probation is warranted. Mr. Adams endured a difficult upbringing and he was exposed to drugs and alcohol at a very young age.[5] Clearly, Mr. Adams's abuse of drugs and alcohol have contributed to his criminal behavior. Since his arrest in this case, Mr. Adams has accepted responsibility for his conduct and he has shown that he is serious about eradicating his problems with drugs and alcohol. Mr. Adams has shown that he can be a productive member in the community and that he can live a responsible law abiding life. Mr. Adams has also shown that he is a responsible parent and that he plays a significant role in the life of his young daughter. Mr. Adams is at the stage of his life where he is eager to move forward and make tremendous improvements. Mr. Adams wants to immediately pursue his goal of attaining a college education. Any sentence which removes Mr. Adams from the community will only disrupt his

---

[4] See 18 U.S.C. § 3553(a)(1).

[5] Unfortunately, much of this early exposure was due to the actions of family members. PSR, ¶¶ 64, 65 & 68.

educational goals and will be a traumatic event for his family. If placed on probation, Mr. Adams will be allowed to pursue his academic goals and he will be able to adequately provide for his daughter.

    **C.**    **Conclusion**.

For the reasons discussed above, a sentence of more than probation would be greater than necessary to satisfy the statutory purposes of sentencing. See 18 U.S.C. § 3553(a). A sentence of probation is a just and fair sentence in this case. Therefore, a sentence of probation is the most reasonable resolution of this matter.[6]

    Respectfully submitted,
    A.J. Kramer
    Federal Public Defender

    _____/s/_____
    Tony W. Miles
    Assistant Federal Public Defenders
    625 Indiana Avenue, N.W.
    Washington, D.C. 20004
    (202) 208-7500

---

[6] In the event this court feels that a sentence of probation without any community confinement is not punitive enough in this case, the court has the option of sentencing Mr. Adams to a period of probation with a condition that a certain period of his probation be served on home detention with electronic monitoring.